**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**TAMMY KAY ZASOWSKI,**

**Plaintiff,**

**Case No. 1:19-cv-00841-TPK**

**v,**

**COMMISSIONER OF SOCIAL**                    **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

Plaintiff Tammy Kay Zasowski filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on April 26, 2019, denied Ms. Zasowski's application for supplemental security income.  Ms. Zasowski has now moved for judgment on the pleadings (Doc. 11), as has the Commissioner (Doc. 14).  For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion,  and remand the case for further proceedings.

## I.  BACKGROUND

Plaintiff's application for supplemental security income had a protective filing date of January 19, 2016.  She alleged that she became disabled on June 19, 2014.  After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on May 8, 2018.  A vocational expert, Dr. Eric Dennison, also testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on July 24, 2018.  He concluded that Plaintiff had not worked since the date of her application and that she suffered from severe impairments including asthma, chronic obstructive pulmonary disease, and obesity.  The ALJ also determined that Plaintiff had been diagnosed with other impairments including sleep apnea, urinary incontinence, chronic bronchitis, depression, and anxiety, but that none of those impairments were severe.  He also found that none of her impairments met the criteria for disability set out in the Listing of Impairments.

Next, the ALJ concluded that Plaintiff had the ability to perform a reduced range of light work activity.  She could climb ramps, steps, ladders, ropes, and scaffolds occasionally and could also occasionally balance, stoop, kneel, crouch, and crawl.  She could also occasionally tolerate exposure to humidity and wetness but not to dusts, odors, fumes, and pulmonary irritants.  Lastly,

Plaintiff could work in extreme cold or extreme heat on only an occasional basis.

At the hearing, the vocational expert testified that some of Plaintiff's age (she was 50 on the date of the hearing), education, and work experience could not perform Plaintiff's past work but could do light, unskilled jobs such as marker, mail clerk, and garment sorter, as well as sedentary jobs like order clerk, document preparer, and telephone quotation clerk. He also gave the numbers in which all of those jobs exist in the national economy. The ALJ accepted this testimony, finding that Plaintiff could perform the light jobs identified by the vocational expert and thus was not disabled within the meaning of the social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are two reasons why the ALJ's decision should be reversed. First, she faults the ALJ for disregarding all of the opinion evidence and substituting her own judgment for that of the experts. Second, she contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Erickson, whose description of Plaintiff's work-related abilities was not compatible with gainful employment.

## II.  THE KEY EVIDENCE

The Court will provide the relevant background for its decision by summarizing both the testimony given at the administrative hearing and the pertinent medical records. It will begin with the hearing testimony.

At the administrative hearing, Plaintiff testified that she completed the eighth grade but subsequently got her GED. Her schooling was all in special education classes, but she could read, write, and do math. Her last job was as a punch press operator; before that, she had been a cashier at a Wendy's restaurant. She had applied for a job as a dishwasher but could not successfully complete the interview due to the humidity of the environment.

Plaintiff said that she could not work due to her inability to lift or stand for long periods of time. She also experienced pain in her legs and lower back as well as difficulty breathing. Lifting or walking made her pain worse, and Tylenol improved but did not completely eliminate it. She believed that her back and leg pain was caused by her constant coughing. She did not sleep well at night and needed to nap during the day. Her coughing and shortness of breath was being treated by multiple medications. Plaintiff was also being treated for mental health issues by her primary care physician, Dr. Erickson.

On a typical day, Plaintiff used a breathing machine and a nebulizer when she got up and then took medications. She did some household chores but also would lie down and watch television. Also, she took a breathing treatment. She was able to prepare meals and could care for herself and fold laundry. Plaintiff was not able to push a vacuum cleaner, carry laundry, or clean a bathtub. She would occasionally shop for groceries and take care of her dog but could not walk more than two or three blocks or stand for more than 20 minutes. She could only lift

eight or ten pounds and could not be around heat or humidity.  Lastly, Plaintiff said that experienced several panic attacks each week and sometimes would not leave her home for weeks at a time.

Dr. Dennison, the vocational expert, testified that Plaintiff's past work was done at the medium exertional level.  He was then asked if a person who was limited to light work with additional restrictions identified by the ALJ could do other jobs.  In response, he identified the jobs of marker, mail clerk, and garment sorter.  Dr. Dennison further testified that if the person were limited to sedentary work, he or she would be able perform jobs like order clerk, document preparer, and telephone quotation clerk.  However, if the person would miss three days of work per month, or if he or she could stand, walk, and sit for only four hours total in a workday, no employment would be available.

The vast majority of the medical records (approximately 200 pages) relate to Plaintiff's treatment for substance abuse and are not particularly relevant to her claims of error.  The remaining records show that Dr. Erickson, Plaintiff's treating physician, had diagnosed her with asthma characterized by wheezing and diminished lung sounds.  In April, 2016, Dr. Erickson's physician's assistant said that Plaintiff had no limitations in lifting or sitting but could walk or stand for less than two hours per day.  (Tr. 510).  Shortly before that, Plaintiff underwent a consultative physical examination done by Dr. Figueroa as well as a consultative psychological examination, which did not show any significant mental limitations.  Dr. Figueroa noted that Plaintiff's complaints included asthma and COPD and that she was taking multiple medications.  Plaintiff reported cooking several times per week and occasionally doing laundry and shopping as well as watching television, listening to the radio, reading, and socializing with friends.  Other than some sensory abnormalities, the physical examination was within normal limits.  Dr. Figueroa thought Plaintiff would have difficulty with any activity requiring moderate exertion but there were no limitations on her ability to do sedentary activities.  (Tr. 518-21).

Dr. Erickson filled out a medical source statement on February 27, 2107.  In that statement, he repeated his diagnoses of COPD and asthma and also said that emotion factors contributed to the severity of Plaintiff's symptoms.  Dr. Erickson thought that Plaintiff could not sit for more than 15 minutes at a time before needing to get up and could not stand for 15 minutes without needing to sit down.  Also, she could stand and walk for less than two hours in a workday and sit for only two hours.  Dr. Erickson did not believe Plaintiff could lift more than ten pounds and could do that only rarely, and that she would miss three days of work per month due to her symptoms, but he also said she could do low stress work and would be off task for only 10% of the time at work.  Lastly, Dr. Erickson said that Plaintiff needed to avoid any type of exposure to irritants or other environmental conditions that could trigger an asthma attack.  (Tr. 523-26).  Dr. Erickson expressed essentially the same views in a form signed on November 13, 2017 and in another one signed on February 21, 2018.  (Tr. 528-31, 535-38).

There are very few treatment notes from Dr. Erickson or other sources.  Generally, they confirm the diagnoses of COPD and asthma and show which medications Plaintiff had been

prescribed.  They also indicate that pulmonary function studies showed only mild to moderate obstructive airway impairment with significant reversibility through the use of bronchodilators. It appears that Dr. Erickson saw Plaintiff once every six months or so for purposes of monitoring her COPD and chronic asthma.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  The Opinion Evidence

Plaintiff's first claim of error involves the way in which the ALJ dealt with the totality of the opinion evidence.  It will be helpful to explain the details of the ALJ's evaluation of that evidence.

The ALJ began by giving some weight to Dr. Figueroa's opinion, which he described as having concluded that Plaintiff would have difficulties with activity requiring moderate exertion. This, the ALJ said, was consistent the ability to perform a reduced range of light work even if the opinion lacked a function-by-function analysis. Part of the reason given for assigning this opinion only some weight was that it did not mention environmental limitations. The ALJ then considered Dr. Erickson's two 2017 opinions, assigning them little weight because "her extreme functional limitations are inconsistent with treatment records and with spirometry reports document moderate obstructive airway disease" as well as being "inconsistent with claimant's reported activities of daily living." (Tr. 31-32). However, the ALJ did purport to adopt Dr. Erickson's recommendation that Plaintiff "avoid extremes of temperature (cold and humidity) and dust fumes, and gases that could trigger an asthma attack, as the record overall supports such limitations." *Id.*

Plaintiff notes, correctly, that the ALJ did not give great or controlling weight to any of the opinions in the record. She argues that by giving only some weight to Dr. Figueroa's opinion, which did not contain a function-by-function analysis, and by rejecting most aspects of Dr. Erickson's opinions, the ALJ was left with nothing but his own lay judgment upon which to craft a residual functional capacity finding. She further argues that the ALJ purported to adopt the environmental limitations expressed by Dr. Erickson but, in fact, misstated them when describing Plaintiff's ability to deal with various environmental factors. These errors, according to Plaintiff, require reversal. The Commissioner responds that the ALJ did rely on Dr. Figueroa's opinion in determining Plaintiff's residual functional capacity and that the environmental restrictions described in that finding are consistent with the demands of the jobs identified by the vocational expert as being within Plaintiff's ability to perform.

The Commissioner's argument centers around the relationship between Dr. Figueroa's opinion and the ALJ's residual functional capacity finding. As noted above, what Dr. Figueroa said, exactly, was that Plaintiff "will have difficulty with activities requiring moderate exertion" but had "[n]o limitations to sedentary activities." The ALJ interpreted this statement to be consistent with the ability to do light work with some restrictions. According to the Commissioner, that is a reasonable interpretation of that statement and this Court has so held in other similar cases.

This Court has said:

Courts have frequently found that moderate limitations in exertional demands are consistent with an RFC for light work. *See Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *10 (W.D.N.Y. June 26, 2019) (light work not inconsistent with moderate exertional limitations); *see Burch v. Comm'r of Soc. Sec.*, No. 17-CV-1252, 2019 WL 922912, at *4 (W.D.N.Y. Feb. 26, 2019) (RFC for light work supported by moderate limitations for exertional activities and other substantial evidence in the record); *see Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016); *see Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (gathering

cases); *Revi v. Comm'r of Soc. Sec.*, 16-CV-8521, 2018 WL 1136997 at *30 (S.D.N.Y. Jan. 30, 2018), *report and recommendation adopted*, 2018 WL 1135400 (S.D.N.Y. Feb. 28, 2018) (ALJ's RFC finding of light work was consistent with consulting examiner's opinion that "plaintiff had only moderate lifting and carrying limitations"); *see Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011), *report and recommendation adopted,* 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching ... consistent with the ALJ's conclusion that Plaintiff could perform light work").

*Koscelski v. Comm'r of Soc. Sec.*, No. 1:18-CV-1480 (WBC), 2019 WL 7403715, at *4 (W.D.N.Y. Dec. 30, 2019).

This case is, however, somewhat different from the ones cited in *Koscelski* because the language of Dr. Figueroa's opinion is not phrased in the same way.  There would appear to be a difference between someone who is moderately limited in her ability to exert herself and someone who would have difficulty with even a moderate level of exertion.  Light work could still involve a moderate level of exertion since it can require up to six hours of standing and walking during a workday and lifting and carrying up to 20 pounds.  If Plaintiff would have a difficulty with even that type of exertion, she might well not be able to do such work, and that is what Dr. Figueroa may have intended to say.  This interpretation is supported by Dr. Figueroa's follow-up observation that Plaintiff had no limitation on sedentary activities.

Other courts have had issues with opinions phrased in this way.  In *Craig R. v. Berryhill,* 2019 WL 4415531, at *5 (N.D.N.Y. Sept. 16, 2019), the court, in considering a similar statement, said that "[i]t is not obvious that Dr. Figueroa's opinion represents a valid assessment of whether Plaintiff has the RFC to perform light work."  Many courts have held that this type of language is simply too vague to support a finding on the issue.  *See, e.g., Romero v. Commissioner of Soc. Sec.,* 2020 WL 3412936, at *13 (S.D.N.Y. June 22, 2020)(" Dr. Figueroa did not explain ... what "marked," "moderate," or "mild" means in terms of what Plaintiff can still do despite these limitations").  On the other hand, at least one judge of this Court has viewed this exact statement as providing substantial support for the determination that a claimant could do light work.  *See Woodworth v. Berryhill*, 2018 WL 1989973 (W.D.N.Y. Apr. 27, 2018).  This Court is not entirely convinced that is so.  And it is similarly not convinced that the ALJ had a substantial basis for reaching that conclusion based on the remaining evidence, which consists almost entirely of some sparse medical records and the three opinions of Dr. Erickson which do not support that finding.  However, the Court need not definitively resolve this issue, because the second part of this first claim requires a remand.

Plaintiff correctly notes that the environmental restrictions in Dr. Erickson's opinions, which the ALJ purported to adopt in their entirety, differ from what the ALJ included in the RFC finding.  The Commissioner, citing to sections of the *Dictionary of Occupational Titles*, asserts that the jobs identified by the vocational expert do not involve either excessive, or indeed any,

exposure to extremes of temperature or humidity. The undersigned has previously declined to accept such an argument, however.   As stated in *Fowler v. Comm'r of Soc. Sec.*, 2015 WL 5579841, at *4 (S.D. Ohio Sept. 23, 2015), "[p]erhaps the Commissioner is asking the Court to take judicial notice of the DOT's contents. But the DOT is not, as Fed.R.Evid. 201(b)(2) requires, a source 'whose accuracy cannot reasonably be questioned.'" It is the ALJ's obligation to develop the record, and this Court's review of the ALJ's decision is limited to what can be found in that record.  The Commissioner may well be correct that someone who has the limitations described by Dr. Erickson can still do the jobs identified by the vocational expert, but the record is simply silent on this issue.  The Court will therefore remand the case so that the record can be developed further on this issue, and so the ALJ can obtain additional clarification from Dr. Figueroa about whether Plaintiff could actually do what is required to perform light work or from another source who may be able to render a valid opinion on that issue.

## B.  The Treating Physician

When this case was decided, the "treating physician" regulation found at 20 C.F.R. §416.927 was still in effect (it has since been repealed).  As this regulation and its companion regulation, 20 C.F.R. §404.1527, have been interpreted,

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" [*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide "

'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

      The parties take different views about whether the ALJ properly applied these legal rules. It is undoubtedly true that little in the current set of treatment notes supports the notion that Plaintiff cannot work at any exertional level, which is basically what Dr. Erickson concluded. On the other hand, as noted above, there is not an abundance of solid evidence that she could do all of the walking, standing, lifting, and carrying needed to do light work, and the ALJ neither imposed any additional limitations in those areas or asked the vocational expert to compare the demands of the jobs he identified to the general requirements of light work.  That issue will also require further development on remand, which might well involve obtaining additional clarification from the treating source.

## V.  CONCLUSION AND ORDER

      For the reasons set forth in this Opinion and Order, the Court **GRANTS** Plaintiff's motion (Doc. 11), **DENIES** the Commissioner's motion (Doc. 14),  and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

                              **/s/ Terence P. Kemp**
                              **United States Magistrate Judge**